(64 App. Div. 167.)

PEOPLE v. GLEN.

(Supreme Court, Appellate Division, Fourth Department.    July 23, 1901.)

1. CRIMINAL LAW—EMBRACERY—EVIDENCE—SUFFICIENCY.

Under Pen. Code, § 75, making it a misdemeanor to influence or attempt to influence improperly a juror in respect to his verdict, that defendant, knowing that a certain person was a grand juror, invited him into a store to talk with him concerning a case which was to be presented to the grand jury, and attempted to influence him against a prosecution, is sufficient to sustain a conviction.

2. SAME—INDICTMENT—VARIANCE.

Where an indictment for embracery alleges that the person improperly attempted to be influenced was a member of the grand jury previously summoned, proof that his name had been drawn from the jury box, and published, but he had not been formally summoned, when the attempt was made, is an immaterial variance.

3. SAME—GOOD CHARACTER—INSTRUCTIONS.

An instruction as to evidence of good character that it did not prove that accused did not commit the crime, but it presented the question as to whether or not a man of accused's standing would be likely to commit the crime, though erroneous in not being sufficiently favorable to accused, is not reversible error in the absence of an exception or request to charge otherwise.

4. SAME—CHARGE TO GRAND JURY—COURT'S DISCRETION—REVIEW.

Under Cr. Code, § 248, requiring the court to give to the grand jury such information as it may deem proper as to their duties and any crimes returned to the court or likely to come before the grand jury, the court will not review the denial of a motion to dismiss an indictment on the ground that the presiding judge read certain affidavits to the grand jury, and directed them to find an indictment if the facts stated in the affidavits were proven before them, since the subject-matter of the charge and the manner of presenting it are within the court's discretion.

McLennan, J., dissenting.

Appeal from Wayne county court.

William J. Glen was convicted of embracery, and he appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

George Raines and W. A. Glen, for appellant.
Charles T. Ennis, Dist. Atty., for the People.

SPRING, J.    The defendant was indicted by the grand jury of the county of Wayne charging him with "an attempt to improperly influence" one Abram Weed "as a member of the grand jury theretofore summoned    *    *    *    in a certain criminal action then pending on complaint of one Michael Abert accusing one Dwight S. Chamberlain of assault in the third degree," which was about to be presented to the said grand jury.    Said Chamberlain was a personal and political friend of the defendant, and the latter apparently regarded the criminal proceedings pending against him actuated by spite. Abram Weed and the defendant had long known each other, and the

former had been drawn as a member of the grand jury of Wayne county, which body was to convene on the 7th day of February, 1898, and the defendant had read the name among the list of grand jurors published in a newspaper. On the 30th of January, Mr. Weed, while in the village of Clyde, in that county, was accosted on the street by the defendant with the remark that he wished to have a "little talk" with him. The defendant added that he noticed he had been drawn as a grand juror, and, as the weather was cold, suggested that they go into a store near by. They did so, the defendant buying the cigars for the two; and, as the store was somewhat crowded, they went into a storeroom in the rear part of the building. Weed, in his narration of what then occurred, testified:

"He spoke again of the cemetery case, and said Dr. Chamberlain— 'There is a sort of spite,' he says, 'against Dr. Chamberlain, and it is a case that will probably come up before the next grand jury;' and he says, 'There is nothing in it. Such a case,' he says, 'seems to me, should not come before the grand jury; simply makes expense for the county.' * * * But further than that he said, he says, the parties connected with it—he used the term 'disreputable.' I can't tell how— and then spoke of a woman that was simply a prostitute. As I said, there was not a name mentioned there with the exception of Dr. Chamberlain's. When he spoke of a woman as a prostitute, I think he said she was some woman connected with that affair."

The defendant did not contradict the substance of this conversation. It is therefore undisputed that he did ask Weed, knowing he was a grand juror, to go into the store, and that his only motive was to talk with him concerning the case against Dr. Chamberlain, which was to be presented to the grand jury of which he was a member. The whole tenor of his talk was to influence the juror against the prosecution of the charge against Dr. Chamberlain. The defendant contends that he was not actuated by any improper motive in this endeavor, but his version of the occurrence in the main corresponds with that given by Mr. Weed.

The definition of the crime of embracery given in section 75 of the Penal Code reads as follows:

"A person who influences or attempts to influence improperly, a juror in a civil or criminal action or proceeding, or one drawn or summoned to attend as such a juror, * * * in respect to his verdict * * * or decision * * * in any case or matter pending, or about to be brought before him, in any case, is guilty of a misdemeanor."

To support the charge under this section, it is not necessary that a proffer of money or other consideration be tendered to the juror improperly approached to influence his decision. The unlawful attempt is the gist of the action, and it was for the jury to construe the intent of the defendant in endeavoring to persuade the juror that there was no merit in the charge against Dr. Chamberlain. The verdict is well supported by the evidence, and we see no reason for disturbing the judgment of conviction on the merits.

The indictment alleges that at the time of the commission of the said crime the attempt to influence improperly was made upon "said Abram Weed as a member of the grand jury theretofore summoned,"

and later in the indictment is found the following: "He, the said William J. Glen, then and there well knowing that the said Abram Weed had been theretofore drawn and summoned as such grand juror as aforesaid," etc. Weed had not then been formally "summoned" as a grand juror, although his name had been drawn from the jury box, and published in the list. The contention of the defendant is that the indictment does not aver that Weed had been drawn as a member of the grand jury, and, as he had not been summoned, the variance of the proof from the indictment is substantial. Under the liberal construction now given to an indictment (Code Cr. Proc. § 285; People v. Clements, 107 N. Y. 205, 13 N. E. 782), the defect does not amount to a fatal variance. The evidence, without objection, showed that at the time of the conversation with Weed the latter was in fact drawn as a grand juror, and the only significance in the attempt of the defendant to influence him lies in that fact. While the averment quoted above alleging defendant knew that Weed "had been theretofore drawn and summoned as such grand juror as aforesaid" is indirect in form, it does charge the fact. It accuses him of an improper attempt to influence Weed as a member of the grand jury, and sets forth in detail the facts to support that accusation. In construing a similar criticism to an indictment, and disagreeing with the opinion in the same case in the court below, and which is cited on the brief of the appellant's counsel, the court of appeals, in People v. Clements, 107 N. Y. 205, 13 N. E. 782, after alluding to the objection urged against the indictment that it did not allege that the statements were in fact untrue, "but only that the defendant well knew them to be untrue," say, at page 210, 107 N. Y., and page 783, 13 N. E.:

"A pleading is deemed to allege what can by fair and reasonable intendment be implied from the facts stated, and a general demurrer for insufficiency was not sustainable on the grounds that the facts were argumentatively or otherwise imperfectly or informally stated. The objection to this indictment, if there be any, was that the falsity of the statements sworn to was only argumentatively alleged; but that it was fairly, and even necessarily, to be implied from the facts stated is very clear. The objection goes only to the form of the allegation."

The defendant had produced on the trial several witnesses to vouch for his previous good character. In commenting upon this testimony, the trial judge instructed the jury:

"The object of that, gentlemen, is to raise in your mind this question. It doesn't prove that he didn't commit this crime, because it is unfortunately too common an occurrence that a man of previous good character is led astray. But it brings home to you this question, and in that light you are to consider it,—as to whether or not it is likely that a man of his standing, a man of his position, a man of his reputation, would be likely to commit a crime, would be likely to jeopardize the fruit and success which a long life of uprightness, integrity, and industry had brought him."

This instruction was not sufficiently favorable to the defendant. People v. Hughson, 154 N. Y. 153–164, 47 N. E. 1092; People v. Elliott, 163 N. Y. 11–14, 57 N. E. 103. There was no exception to this portion of the charge, and no request to charge otherwise was

made. Had the attention of the trial judge been called to the true rule applicable to proof of this kind, it is fair to assume that he would have conformed to it. While we might order a new trial by reason of this erroneous instruction without an exception (Code Cr. Proc. § 527), as suggested by the counsel for the appellant, justice does not require us to exercise that power. The defendant was convicted of a misdemeanor, but the offense is one which strikes at the integrity of our judicial system, and the proofs fully warranted the verdict of the jury. He is an intelligent man of experience, was ably defended by skillful counsel, the trial was fairly conducted, and there is no occasion for us to be lenient to him in the way suggested, inasmuch as the conclusion reached by the jury is a just one from the evidence.

When the trial was moved in the county court, a motion was made in behalf of the defendant to dismiss the indictment, based upon affidavits which were presented to the court. These affidavits show: That during a trial term of the supreme court of Wayne county the grand jury were considering the charge against Dr. Chamberlain which was the subject of defendant's alleged attempt improperly to influence the juror Weed. The justice presiding at the term learned of this attempt and alleged kindred efforts of other persons, and, calling the grand jury before him, gave them instructions and read affidavits to them. One of these was the affidavit of the juror Weed, which contained the substance of the facts subsequently testified to by him upon the trial of this action. The affidavit of another grand juror was also read by the justice presiding to that body, tending to show the exercise of improper influence upon him in said Chamberlain matter; and also another affidavit of like import was read. That the presiding justice commented with some severity upon this alleged endeavor to tamper with the jurors, and read to them section 75 of the Penal Code, defining the crime of embracery, and among other things said: "If what is charged in these affidavits shall be proven before your body, then it will be your duty to find a bill of indictment for this misdemeanor against the persons who are guilty." Many affidavits were read in the county court on the motion to dismiss the indictment, setting forth these facts in detail. The charge of the learned judge to the jury as reported in the Rochester papers was also presented on this motion, although its accuracy was never certified by the learned justice presiding. The motion to dismiss was denied by the county court, and appellant's counsel now seek to review this decision, claiming that the trial justice transcended his authority in reading these affidavits to the grand jury, and that his direction to find an indictment if the facts contained in the affidavits were proven before them is reversible error. There is much contrariety of judicial authority as to the right to dismiss an indictment upon this ground, or to review upon appeal an order refusing to do so. Section 313 of the Code of Criminal Procedure provides that "the indictment must be set aside by the court in which the defendant is arraigned, and upon his motion, in either of the following cases, but in no other." The two cases specified relate—First, to the form of

the indictment; and, second, where a person has been present during the session of the grand jury "while the charge embraced in the indictment was under consideration." The right to appeal is not a constitutional one, but relates wholly to the procedure, and is therefore within the control of the legislature. People v. Dunn, 157 N. Y. 528–539, 52 N. E. 572; People v. Petrea, 92 N. Y. 128. Following along this line, it has been held that, the cases in which an indictment can be dismissed having been prescribed, no other can be read into the section. People v. Petrea, 92 N. Y. 145; People v. Rutherford, 47 App. Div. 209, 62 N. Y. Supp. 224. Additional force is given to this restrictive interpretation by the amendment of the section in 1897, interpolating the words, "but in no other," indicating an intention on the part of the legislature to limit the grounds of the motion to those embodied in this section of the Code. Cases last cited; People v. O'Connor, 31 Misc. Rep. 668, 66 N. Y. Supp. 126; People v. Willis, 23 Misc. Rep. 568, 52 N. Y. Supp. 808. There is much very eminent judicial authority in conflict with this position. People v. Molineux, 27 Misc. Rep. 80, 58 N. Y. Supp. 155; People v. Clark (O. & T.) 14 N. Y. Supp. 642; People v. Brickner (O. & T.) 15 N. Y. Supp. 528; People v. Vaughan, 19 Misc. Rep. 298, 42 N. Y. Supp. 959; People v. Thomas, 32 Misc. Rep. 170, 66 N. Y. Supp. 191. In these cases the right to dismiss on other grounds than the two contained in said section 313, and to review on appeal the order denying such a motion, pursuant to section 517 of the Code of Criminal Procedure, was claimed to be one of the inherent powers vested in the court, and within section 671 of that Code. It is unnecessary here to attempt any reconciliation of these two sets of cases. Suffice it to say that the present case is distinguishable from those last cited. In every one of those cases, so far as I have been able to discover, illegal evidence had been presented to the grand jury, and the motion to dismiss the indictment was founded upon that ground. Code Cr. Proc. § 256, provides that "the grand jury can receive none but legal evidence." A person accused of the commission of a crime is accordingly guarantied that illegal evidence cannot be resorted to in the presentment of his case to the grand jury, and, if there is any invasion of his right in this regard, he must be entitled in some manner to obtain judicial condemnation of the infraction. It would be a burlesque to embody the requirement in the Code if no redress were afforded a defendant for its violation. The complaint made by the defendant involves no transgression of any of the legal rights accorded by the constitution or the Code. In this particular lies the plain line of demarcation between this case and those in which the defendant was permitted to move to dismiss the indictment. Section 248 requires the court to charge the grand jury. It requires that he read to them certain sections of the Criminal Code, or furnish to them a copy of the same, and then provides:

"And must give to them such information as it may deem proper as to the nature of their duties, and any charges or crimes returned to the court or likely to come before the grand jury."

The subject-matter of his charge, and the manner of presenting it to the grand jury, rest in his discretion. If he desires to read to them

71 N.Y.S.—57

affidavits showing that a crime has probably been committed, and the facts pertaining to it, that mode of procedure is open to him. The exercise of that discretion, in my judgment, is not subject to review. If, however, it can be reviewed at all, assuredly not unless it has been grossly abused to the prejudice of the defendant. The affidavits which were read to the grand jury are not in the record. Mr. Weed's affidavit recites the substance of what was contained in the one he made, and it shows no fact beyond what he testified to on the trial of the action, and which, in all its main features, was corroborated by the defendant in his own testimony. There was no injury to the defendant by this course adopted by the learned judge. Mr. Weed, the grand juror, of his own volition could have caused this whole matter to be presented to the body of which he was a member. Of course, the facts contained in his affidavit were all known to him. He had disclosed them, and every part of the information there imparted it was his duty to lay before the grand jury for investigation by it. The error, if any, in the instruction above quoted to the grand jury, is unimportant. The authenticity of it depends upon affidavits, and it has never received the sanction of the judge who uttered it. The many cases cited by the appellant's counsel purporting to relate to a direction of this kind are where the instruction was on the trial, when an entirely different rule obtains. The judgment of conviction should be affirmed.

Judgment of conviction affirmed. All concur, except McLENNAN, J., who dissents in opinion.

McLENNAN, J. (dissenting). We think the evidence in this case was not sufficient to support a verdict of guilty. The defendant was indicted for the crime of "embracery," for having influenced or attempted to influence the action of one Weed, who at the time had been drawn, but had not been summoned, as a grand juror, in respect to a charge against one Chamberlain, which it was supposed would be investigated by a grand jury of which Weed was to be a member. The evidence, interpreted most unfavorably to the defendant, is to the effect that on the 5th day of February, 1898, a few days before the grand jury was to convene, the defendant—who had been looking for him—met Weed upon one of the streets in the village of Clyde; that the defendant said: "Hello, Weed. I understand you are a grand juror. I want to have a little talk with you. You have probably heard of the cemetery case." The defendant then spoke of its being cold,—and in fact it was an unpleasant day,—and Weed then said, "Let us go into Mr. Sand's store." They went to a room in the back part of the store, the door of which remained open, and defendant again spoke of the cemetery case; said there was a sort of spite against Dr. Chamberlain; said that it was a case that would probably come before the next grand jury, but that there was nothing in it; said that such a case, it seemed to him, should not come before the grand jury, for it simply made expense for the county. He also spoke of a woman who was supposed to be connected with the case, and said she was a prostitute. This is substantially all the conversation

that was had in regard to the case, or in respect to the grand jury. Nothing was said as to what Weed should do, or what he should not do, or what the defendant desired in the premises. Weed, who was the only witness called by the people who testified as to what occurred, said he never suspected that the defendant was attempting to influence his action as a grand juror in any manner whatever, and that the conversation did not have any influence upon him; that it did not last to exceed five minutes, and possibly not to exceed two; and that after that they talked about other things. He said he never thought of the conversation until he was asked in the grand jury room, by the district attorney, if any one had talked to him about the case. Weed testified:

"He [the defendant] did not dwell at all upon this Chamberlain case, or go into the facts about it. He did not undertake to tell me how the thing had happened. He did not say anything to me directly as to whether he wished I would do this one or the other thing with the case, and at the time of the conversation I was not impressed in any way that he was trying to influence my action by what he said. * * * Q. Did you regard it as a talk calculated to draw your attention to the case, and have you look at it carefully? A. That was just my opinion exactly. Q. That you thought he wanted to call your attention to it? A. Yes; the little I did think of it. Q. At that time you did not get the impression that he wanted you to act apart from your own conscientious convictions on hearing the testimony in the case? A. No. Q. And whether he said that it was a case that should not go before the grand jury, you do not recollect about that? A. No; I don't. * * * Whether he said directly that he did not think it was a case that properly should go before the grand jury, I won't say. This assertion that he made that it was a matter of spite is the single sentence that I recollect distinctly. Q. Did he say anything in that conversation as to whether you should vote for or against Dr. Chamberlain in the grand jury? A. No."

It cannot be pretended that the defendant in fact influenced the action of Weed as a grand juror in the slightest degree. Weed testified that he did not, and there is no fact or circumstance disclosed by the evidence which in any manner contradicts his statement. It does not even appear that Weed did not vote for the indictment against Dr. Chamberlain which was in fact found by that grand jury. The petit jury then must have found that the defendant "attempted" to influence Weed. Does the evidence support such a finding? It appears that at the time Weed was a man 67 years of age, and had resided in the county of Wayne, three miles from the village of Clyde, during that entire time. He was a farmer, a man of good character, of prominence in the county, and had known the defendant personally for about 35 years. Whenever they met,—which was very frequently,—it was their habit to stop and talk. Mr. Weed had learned from the newspapers precisely what the defendant informed him, to wit, that Dr. Chamberlain's case was coming before the grand jury. He had read about the cemetery case, and Dr. Chamberlain's connection with it. He was a man of education, a man accustomed to read a great deal; had frequently acted as a grand and petit juror; had been assessor of his town for two or three terms, a road commissioner, and a candidate for member of assembly. It clearly appears that Mr. Weed was a substantial citizen, a man with views of his own, and a man who would not be likely to be influenced by casual remarks of

the character made to him by the defendant. It also appears that the defendant at the time was 61 years of age. He had lived in the county over 40 years; was a man of large acquaintance; had been sheriff of the county; and, as appears by the evidence of a large number of witnesses, his reputation and standing in the community was good. Weed testified, as we have seen, that it never entered his mind that the defendant was attempting to influence his action as a grand juror, or in respect to Dr. Chamberlain's case; that he had no thought of such a thing; that the conversation which occurred between them, whatever the precise words used may have been, did not convey to him such an idea or impression; and the defendant testified that he did not attempt to influence Weed, and had no thought of so doing. The jury, by their verdict, have found, notwithstanding the testimony of the two participants in that conversation, that such was the purpose of the defendant, and that he did make such an attempt. We think the language used, construed most unfavorably to the defendant, when considered in connection with all the circumstances, was not sufficient to overcome the positive testimony of the defendant that "he did not attempt to influence the action of Weed," especially when taken in connection with the fact that Weed himself swears that it was not of such a character as led him to mistrust that the defendant intended or was seeking to exercise any influence over him. The fair interpretation of the language used by the defendant is: "Weed, the cemetery case is coming before the grand jury. There is a good deal of spite against Dr. Chamberlain. Investigate the case carefully, for the county ought not to be put to the expense of investigating cases brought simply for spite." That is the interpretation put upon the language by Weed, as testified to by him. That was the meaning intended by the defendant, as testified to by him in effect. The people urge, notwithstanding, that the language shows the defendant was attempting to influence the action of Weed, although they must admit that the attempt was so feeble, if made, that Weed did not know it or mistrust it. If such casual conversation had with a "juror," "arbitrator," or "referee," under the circumstances disclosed by the evidence in this case, may be made the basis of a criminal prosecution, the courts of this state from now on need never lack for business, and a very large number of citizens heretofore supposed to be law-abiding have been or are liable to criminal prosecution.

What constitutes the crime of "embracery," which is defined by section 75 of the Penal Code, has seldom been considered by the courts of this country. So far as I have been able to discover, in only two cases has a person been put upon trial for that offense in the United States. State v. Sales, 2 Nev. 269; State v. Brown, 95 N. C. 685. This is probably due to the fact stated in McLain, Cr. Law, § 899, as follows:

"But the statutes providing for the punishment of an attempt to corrupt a juror by offering him improper inducements to influence his decision supersede the common law and the early English Statutes relating to embracery, so that under that name the crime is practically unknown with us, the

offenses which the statutes create being analogous to those of bribery and accepting bribes."

The offense was described by Blackstone as "an attempt to influence a jury corruptly to one side by promises, persuasions, entreaties, money, entertainment, and the like." 4 Bl. Comm. 140. In 1 Hawk. P. C. c. 85, it is said:

"It seems clear that any attempt whatsoever to corrupt or influence or instruct a jury, or in any way to incline them to be more favorable to the one side than to the other, by money, promises, letters, threats, or persuasion, except only by the strength of the evidence and the arguments of the counsel in open court at the trial of the cause, is a proper act of embracery, whether the jurors on whom such attempt is made give any verdict or not, or whether the verdict given be true or false."

Substantially the same definition was adopted in Gibbs v. Dewey, 5 Cow. 503, although the case was an action for slander. These definitions do not aid in determining the meaning of section 75 of the Penal Code, or in defining what precise acts constitute the offense, so that we are brought back to the question: Within the language of the section, is the evidence in this case sufficient to prove beyond a reasonable doubt that the defendant improperly attempted to influence the juror Weed in respect to his action as a juror? For the reasons above indicated, we think it fails to establish beyond a reasonable doubt the defendant's guilt. In my opinion, the justice presiding at the trial term of the supreme court at which the indictment against the defendant was found committed error, when charging the grand jury, by reading to them the affidavits referred to in the record before us; that the motion made on behalf of the defendant to dismiss the indictment upon that ground was properly made, and should have been granted; and that its denial presents such error as to require a reversal of the judgment of conviction. If reversible error was thus committed by the learned presiding justice, there can be no doubt that the question was properly raised by the defendant's motion to dismiss the indictment, and that the order denying such motion is reviewable by this court, notwithstanding the error complained of is not one of those specified in section 313 of the Code of Criminal Procedure. This has been distinctly held in a large number of cases. The question was fully considered by Mr. Justice Rumsey in People v. Brickner (O. & T.) 15 N. Y. Supp. 528, in an opinion in which substantially all the authorities are cited and considered, and the rule above indicated was held to be correct. By the affidavits in the record it appears conclusively and without contradiction that in charging the grand jury in respect to the crime charged in the indictment, having called them before him for that purpose, the learned trial justice, after calling attention to the nature of the charge which they were to investigate, and the law defining the offense and applicable thereto, read to them three affidavits,—one made by Abram Weed, a member of the grand jury, and two others, made by Harvey Watson and Charles Powers, respectively,—in which the affiants purported to state in detail the facts constituting the offense charged in the indictment to have been committed by the defendant, and substantially all the

facts relied upon by the people to prove the offense.   Abram S. Weed, one of the affiants, was sworn before the grand jury, but what he testified to there does not appear; and, so far as appears, the affiants Watson and Powers were not sworn before the grand jury at all. The learned justice, at the close of his charge, and after reading the affidavits referred to, stated to the grand jury: "If what is charged in these affidavits shall be proved before your body, then it will be your duty to find a bill of indictment for this misdemeanor against the persons who are guilty of it." The jury were thereupon directed to return to the jury room for deliberation, and thereafter the indictment in question was found.   During such deliberation they must have had in their minds the sworn statements of the three affiants, who, so far as appears, were not sworn before the grand jury, and were not subjected to cross-examination or other tests to ascertain whether the statements made by them in the affidavits were true or false; and it cannot be said that those statements, which were given emphasis by being read by the court, did not materially influence the grand jury's action.   It seems to me that such a proceeding ought not to receive the sanction of this court.   If it does, then any justice is at liberty, if so inclined, while charging a grand jury called before him for the purpose of directing them to investigate to ascertain whether or not a specific crime has been committed by a particular individual, to read to such grand jury any number of affidavits embodying the facts necessary to establish the commission of such crime by such individual, without reference to whether or not the respective affiants are to be called before the grand jury and sworn in respect to the facts stated by them.   It will be readily seen that the action of a grand jury might be influenced much more by affidavits read to them by the court under such circumstances than by any facts which might be sworn to by witnesses examined before them.   The evidence of the witness or witnesses examined might not bring conviction, might be disregarded by the grand jurors, but, if supplemented and fortified by affidavits of other persons, perhaps personally known to the grand jurors, the evidence presented would quite likely be deemed sufficient to justify the finding of a true bill.   So far as I have been able to discover, this precise question has not been passed upon and decided by the courts of this state.   It is said in Thomp. & M. Juries, § 599:

"The grand jury have a right at all reasonable times during the discharge of their duties to apply either to the court or to the prosecuting attorney for advice, but this advice must be restricted to matters of law. Neither the court nor this officer can say to the jury that the facts as shown by the evidence are sufficient to authorize them to find a bill."

This was precisely what was said by the trial justice in the case at bar.   He said:

"If what is charged in these affidavits shall be proven before your body, then it will be your duty to find a bill of indictment for this misdemeanor against the persons who are guilty of it."

People v. Flack, 125 N. Y. 324, 26 N. E. 267, 11 L. R. A. 807; People v. Helmer, 154 N. Y. 596–601, 49 N. E. 249.

In this case evidence, the precise facts which constituted the alleged offense, purported to be stated in affidavits obtained ex parte, which were read to the jury, and in such manner as to lead them to give weight to the statements contained therein, without having opportunity to cross-examine the affiants, to observe the manner of their giving testimony, or in any other manner to satisfy themselves as to the truthfulness of the statements made. If such rule shall receive the sanction of the courts, it will be unnecessary in many cases for the prosecuting attorney to submit more than a scintilla of evidence to the grand jury in the regular way, because the convincing evidence, and that which will influence the finding of the bill of indictment, may be supplied by affidavits of prominent persons, or those, perchance, who may be influential with members of the grand jury, and read by the presiding judge as a part of his charge, respecting a particular crime which he directs to be investigated. We think such rule ought not to prevail. If it was error to read the affidavits in question, it is no answer to defendant's motion to say that he did not show that it did harm. In People v. Helmer, supra, the headnote is as follows:

"Where the charge to the jury is erroneous, the verdict must be set aside, unless it is apparent that the error did not and could not have affected the verdict; and it is not for the defendant to show how he was injured by it, but it rests with the prosecution to show that no possible injury could have arisen from the error."

We think the judgment should be reversed.